### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Yvette Yuri Lanuza Digan,<br><br>       Plaintiff,<br><br>  v.<br><br>Henry Pharris, Pi Tau Elders, Inc., Zeta Psi Fraternity, Inc. and Worcester Polytechnic Institute,<br><br>      Defendants. | No. 1:25-cv-11448 |

### COMPLAINT AND DEMAND FOR A JURY TRIAL

### INTRODUCTION

1.  This is an action for damages arising from severe and life-altering burn injuries sustained by Plaintiff, a resident of Hong Kong Special Administrative Region, People's Republic of China ("HK SAR"), due to the negligent conduct of Defendants at a fraternity house affiliated with the Zeta Psi Fraternity, Inc. ("Zeta Psi") and regulated by Worcester Polytechnic Institute (WPI) on or about May 13, 2025 in Worcester, Massachusetts.

2.  Defendants' negligent actions, including failure to supervise dangerous activities and breach of assumed duties, caused Plaintiff's catastrophic injuries.

Plaintiff seeks compensatory damages, pre-judgment interest, and costs, exceeding $75,000, under the Court's diversity jurisdiction.

## JURISDICTION AND VENUE

3.  This Court has jurisdiction under 28 U.S.C. § 1332(a)(2) because Plaintiff is a resident of and domiciled in Hong Kong, Defendant Henry Pharris is a resident of Massachusetts, Defendant Pi Tau Elders, Inc. is a Massachusetts corporation, Defendant Zeta Psi is a New York corporation, and Defendant Worcester Polytechnic Institute is a Massachusetts educational institution, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.  Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this claim occurred in Worcester, Massachusetts, within this District.

## PARTIES

5.  Plaintiff, Yvette Yuri Lanuza Digan, is an individual domiciled in the HK SAR, who was lawfully present in Massachusetts for an exchange program at Boston University and was visiting WPI at the time of the incident.

6.    Defendant Henry Pharris is an individual residing in Worcester, Massachusetts, a student and member of the Zeta Psi fraternity chapter at Worcester Polytechnic Institute.

7.    Defendant Pi Tau Elders, Inc. is a Massachusetts corporation with a principal office in Foxboro, Massachusetts and is recognized as a tax-exempt social club under Section 501(c)(7) of the Internal Revenue Code. As a 501(c)(7) entity, Pi Tau Elders, Inc. exists solely to own, operate, and oversee the fraternity house at 32 Dean Street, Worcester, Massachusetts, for the exclusive use and benefit of Zeta Psi and its Pi Tau chapter at WPI.

8.    Defendant Zeta Psi is a New York corporation and is recognized as a tax-exempt social club under Section 501(c)(7) of the Internal Revenue Code. Zeta Psi has substantial continuous contacts in Massachusetts, including operating, controlling, and supervising local chapters such as the one at WPI. Zeta Psi exercises significant control over its local chapters through its constitution, bylaws, rules, regulations, and educational programs, and maintains the right to discipline members and chapters.

9.    Defendant Worcester Polytechnic Institute (WPI) is a
      private university organized under Massachusetts law,
      with its principal place of business at 100 Institute
      Road, Worcester, MA. WPI actively promotes Greek life as
      part of its campus community, exercises substantial
      control over fraternity activities and conduct,
      maintains a detailed regulatory framework governing
      fraternities, and has the authority to discipline
      fraternities and their members for policy violations.

## FACTUAL ALLEGATIONS

10.   On or about May 13, 2025, Plaintiff, who was an invited
      guest, attended a social gathering at the Zeta Psi
      fraternity house located at 32 Dean Street, Worcester,
      Massachusetts, which was not open to the general public
      and not part of any charitable program of the
      Defendants.

11.   The fraternity house is owned and managed by Defendant
      Pi Tau Elders, Inc., on behalf of Zeta Psi, and serves
      as the designated venue for fraternity-sanctioned
      activities, including the social gathering where the
      incident occurred and subject to policies, rules, and
      oversight by Defendant WPI.

12.   During the party, fraternity members, including
      Defendant Pharris, negligently started and maintained an

open fire in the backyard of the fraternity house, unintentionally failing to follow proper safety fire protocols due to inadequate training and oversight.

13. At the time of the incident, the fraternity chapter utilized designated members known as "risk managers" who were responsible for overseeing safety measures and ensuring that fraternity activities complied with applicable laws, regulations, and organizational policies. These risk managers were tasked with identifying and mitigating potential hazards, including but not limited to fire safety risks, during fraternity events.

14. The following members of Zeta Psi fraternity, Pi Tau Chapter, had knowledge of and/or contributed to the dangerous practices at the fraternity house, including the use of open fires without proper safety measures, which led to Plaintiff's injuries: Ethan Edmonson, Jonah Potter, Ryan Siepmann, Ryan Addeche, Trevor Bowen, Jesse Beers, Alexander Abrahamsen, Nicolas LeSieur, Ryan Hsu, Theo Sawyers, James Gikas, Ethan Wilson, Aidan Bryar, James Purnell, Charles Pavis, Kai Yawata, Henry Pharris, Ariel Shirzadi, Frank Almeida, Conor Doran, Jameson Courtney, Mason Basara, Oscar Ivy, Jacob DeCarlen-Bumiller, Joseph Baisley, Andrew Mitchell, Connell

Paxton, Hayden Punsalon, Joseph Tully, Lucas Marchese, and Nicholas Sirota.

15.    As members of the Pi Tau Chapter of Zeta Psi, these individuals had a duty to:

a.  Ensure that fraternity activities, including social gatherings, were conducted in compliance with applicable safety protocols;
b.  Identify and mitigate foreseeable risks, including the risks associated with fire-related activities;
c.  Enforce the fraternity's risk management policies and ensure that designated risk managers fulfilled their duties; and
d.  Prevent unsafe practices, such as the use of flammable accelerants, that created a foreseeable risk of harm to guests.

16.    These individuals knew or should have known about the dangerous practice of starting fires at fraternity events, which had occurred on prior occasions at the chapter house. Despite this knowledge, they failed to take reasonable steps to ensure the safety of guests such as plaintiff, by:

a.  Failing to address or report unsafe practices to fraternity leadership or risk managers;
b.  Failing to enforce safety protocols to prevent the use of flammable accelerants; and
c.  Permitting a culture of unsafe behavior to persist within the fraternity.

17.    By failing to take reasonable steps to address these foreseeable risks, the named fraternity members

contributed to the conditions that caused Plaintiff's injuries.

18.   The risk managers negligently failed to fulfill their duties by routinely allowing an open fire to be started and maintained without proper precautions, failing to prevent the use of flammable accelerants, and failing to implement or enforce basic fire safety protocols. Their negligence directly contributed to the hazardous conditions that caused Plaintiff's injuries.

19.   Defendant Pharris, a fraternity member, negligently poured a highly flammable liquid believed to be denatured alcohol that was not intended or used as an alcoholic beverage, but rather as an accelerant, onto the fire while acting within the scope of his duties as a fraternity member and participating in fraternity-sanctioned activities, in a manner that unintentionally violated basic fire safety principles.

20.   As a direct result, an enormous fireball erupted, enveloping Plaintiff and igniting her clothing, causing severe, life-altering burn injuries to substantial portions of her body.

21.   Plaintiff was first transported to UMass Memorial Medical Center in Worcester via ambulance and then flown to Massachusetts General Hospital, where she remains

hospitalized and continues to receive intensive medical care.

22. The Plaintiff underwent numerous surgeries and painful procedures to address her severe burns, and her treatment is ongoing, with a prolonged recovery expected due to the life-altering nature of her injuries.

### ZETA PSI'S CONTROL AND RESPONSIBILITY

23. Defendant Zeta Psi exercises substantial control over its local chapters, including the WPI chapter, through various mechanisms including:

   a. A comprehensive constitution, bylaws, and rules governing chapter operations;
   b. Collection of membership dues from local chapter members;
   c. Regular meetings with local chapter officers;
   d. Educational programs and risk management policies;
   e. Requirements that all members abide by Zeta Psi's rules, regulations, membership criteria, and risk management training requirements;
   f. Power to discipline chapters and individual members;
   g. Authority to revoke chapter charters or suspend operations; and
   h. Promotion of itself as a single organization with chapters across North America.

24. Members of local chapters, including the WPI chapter, are considered and refer to themselves as members of Zeta Psi, not merely members of an independent local entity.

25.   Zeta Psi was aware of the risks associated with social
      events and the particular dangers of open flames, yet
      failed to implement adequate safety protocols.

26.   Zeta Psi knew or should have known that similar
      dangerous activities had occurred at its chapters
      previously, creating a foreseeable risk of serious
      injury to guests like Plaintiff.

27.   Zeta Psi and Pi Tau Elders, Inc. exercised direct
      control over the activities of fraternity members
      through formal rules, risk management policies, and
      supervisory oversight. Fraternity members, including the
      named individuals, were required to abide by Zeta Psi's
      policies and directives and their conduct was subject to
      discipline, supervision, and enforcement by Zeta Psi and
      Pi Tau Elders, Inc.

28.   Zeta Psi and Pi Tau Elders, Inc. are vicariously liable
      for the acts and omissions of the named fraternity
      members, including Defendant Pharris, as these
      individuals were acting within the scope of their duties
      as members and representatives of the fraternity. The
      negligent actions of these individuals, including the
      failure to follow fire safety protocols and the use of
      flammable accelerants, were performed in furtherance of

fraternity-sanctioned activities under the authority and supervision of Zeta Psi and Pi Tau Elders, Inc.

29.   The relationship between Pi Tau Elders, Inc. and Zeta Psi is an intentionally structured arrangement in which Pi Tau Elders, Inc. acts on behalf of Zeta Psi to manage and maintain the fraternity house for the chapter's operations and activities, ensuring it serves Zeta Psi's purposes and mission.

30.   Despite being separate legal entities, they function as integrated parts of a single fraternity system:

   a.   Pi Tau Elders, Inc. was incorporated specifically to acquire, own and maintain property for the exclusive use and benefit of the Pi Tau chapter of Zeta Psi;
   b.   Pi Tau Elders, Inc.'s 501(c)(7) tax-exempt status as a social club confirms its primary purpose of facilitating the social activities of Zeta Psi members;
   c.   The board of Pi Tau Elders, Inc. is comprised primarily or exclusively of Zeta Psi alumni who were once members of the fraternity;
   d.   Pi Tau Elders, Inc. coordinates with Zeta Psi regarding property management decisions, house rules, and safety protocols;
   e.   The fraternity house owned by Pi Tau Elders, Inc. prominently displays Zeta Psi insignia, letters, and branding, representing itself to the public as a Zeta Psi facility;
   f.   Zeta Psi's constitution and bylaws recognize and incorporate local housing corporations like Pi Tau Elders as essential components of their chapter structure;
   g.   Zeta Psi exercises control over which members may live in the fraternity house owned by Pi Tau Elders through its membership and leadership selection process;
   h.   Pi Tau Elders, Inc. defers to Zeta Psi on disciplinary matters affecting house residents and

has incorporated Zeta Psi's risk management policies into its housing rules; and

i.  Members living in the fraternity house pay dues to Zeta Psi while paying rent to Pi Tau Elders, Inc., creating a coordinated financial structure.

31.  The coordinated financial and operational structure between Zeta Psi and Pi Tau Elders, Inc. created an integrated system where fraternity members acted under the authority of both entities, making Zeta Psi and Pi Tau Elders, Inc. responsible for the conduct of these members.

32.  Courts have recognized that a national fraternity which exercises substantial control over its local chapters owe a duty of care to social invitees at chapter events. For example, in Brown v. Delta Tau Delta, 118 A.3d 789, 793 (Me. 2015), the court held that where a national fraternity "effectively handed over a residential building to a group of college students," it "should have anticipated that alcohol-related parties on the premises would follow, as could the social problems that accompany such activities." The court found that a national fraternity's "intricate hierarchy of rules and regulations" and ability to discipline members created a legal duty to social invitees. The relationship between Zeta Psi and Pi Tau Elders exhibits even stronger indicia of control and integration than was present in Brown.

## WPI'S CONTROL AND RESPONSIBILITY

33.   Defendant WPI exercises substantial control over

fraternities operating on or near its campus, including

Zeta Psi, through:

   a. A formal recognition process requiring fraternities to
      apply for and maintain "recognized" status;
   b. A detailed code of conduct and rules governing
      fraternity operations;
   c. Regular oversight by WPI staff specifically assigned
      to Greek organization affairs;
   d. Authority to investigate and discipline fraternities
      for violations of university policies;
   e. Power to revoke recognition and impose sanctions;
   f. Promotion of Greek life to prospective and current
      students as a valuable and regulated part of campus
      life; and
   g. Collection of data regarding fraternity activities and
      conduct.

34.   WPI actively promotes Greek life as part of its campus

community on its website, in recruitment materials, and

during campus visits, portraying fraternities as well-

managed, worthy organizations that enhance students'

educational experience.

35.   WPI had received prior reports of dangerous activities,

at fraternities including Zeta Psi, but failed to take

adequate corrective action.

36.   WPI knew or should have known that inadequate

supervision of fraternity activities, particularly those

involving fire, created a foreseeable risk of serious

injury to guests like Plaintiff.

37.  Despite this knowledge, WPI failed to implement and
     enforce adequate safety measures for fraternity events
     where individuals like Plaintiff were invited.

38.  Defendant Henry Pharris, along with other unidentified
     members of the Zeta Psi fraternity, acted negligently
     while performing activities consistent with their roles
     as fraternity members by creating a hazardous condition,
     including starting an open fire without adequate safety
     precautions and using a highly flammable substance
     without fully appreciating the risks involved.

39.  Defendants Pi Tau Elders, Inc. and Zeta Psi failed to
     maintain a safe premises, supervise fraternity
     activities, train members on fire safety, or enforce
     fire safety protocols, while fraternity members,
     including Defendant Pharris, were acting within the
     scope of their duties and responsibilities under the
     supervision and control of Pi Tau Elders and Zeta Psi.

40.  Defendant WPI failed to adequately regulate or oversee
     the Zeta Psi fraternity's activities, despite its
     authority to do so and its active promotion of Greek
     life to prospective students like Plaintiff, allowing
     unsafe conditions to persist.

41.   Defendant WPI's involvement with fraternities and the
      social activities occurring therein, including the event
      at which Plaintiff was injured, does not directly
      accomplish WPI's charitable purpose, but rather
      constitutes commercial activity.

42.   WPI's relationship with fraternities, including Zeta
      Psi, is primarily commercial in nature because, among
      other things:

      a. WPI actively promotes fraternity life as a marketing
         tool to attract prospective students and enhance its
         competitive position in the higher education
         marketplace;
      b. The social gathering at which Plaintiff was injured
         was not an educational event, contained no academic
         content, and was not part of WPI's curriculum or
         educational program;
      c. The fraternity gathering was a purely social activity
         unrelated to WPI's charitable education mission;
      d. WPI derives a substantial economic benefit from its
         relationship with fraternities by outsourcing student
         housing and social activities that would otherwise
         require university resources;
      e. WPI markets Greek life as a premium "student
         experience" that justifies its tuition rates and
         enhances its brand in the competitive higher education
         market;
      f. WPI's regulatory relationship with fraternities
         resembles a business licensing arrangement rather than
         direct charitable activity;
      g. WPI requires all fraternities to obtain commercial
         general liability coverage and name WPI as one of the
         insureds.

43.   Plaintiff's damages include, but are not limited to,
      medical expenses, future medical costs, permanent
      disfigurement, lost educational and career

opportunities, and severe emotional distress, totaling well in excess of $75,000.

## COUNT I: Negligence
### (Against All Defendants)

44.   Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

45.   Defendants owed Plaintiff a duty of care to maintain a safe environment and prevent foreseeable harm during fraternity activities.

46.   Defendant Pharris breached this duty by negligently pouring a flammable liquid on an open fire, creating a dangerous fireball.

47.   Defendants Pi Tau Elders, Inc. and Zeta Psi breached their duty by starting and maintaining the fire, as well as failing to supervise fraternity members, enforce safety protocols, provide adequate training on fire safety, or maintain a code-compliant premises.

48.   Defendant WPI breached its duty by failing to adequately regulate or oversee fraternity activities despite actively promoting Greek life to prospective students, failing to enforce safety policies, and allowing dangerous conditions to persist at fraternities it recognized and regulated.

49.  Defendants' breaches directly and proximately caused
     Plaintiff's severe burn injuries and resulting damages.

### COUNT II: Premises Liability
### (Against Pi Tau Elders, Inc. and Zeta Psi)

50.  Plaintiff incorporates the preceding paragraphs as if
     fully set forth herein.

51.  Defendants Pi Tau Elders, Inc. and Zeta Psi owned,
     operated, controlled, and/or maintained the premises
     where Plaintiff was injured.

52.  As owners and/or operators of the premises, these
     Defendants owed Plaintiff, a lawful visitor, a duty to
     maintain the premises in a reasonably safe condition and
     to warn of any dangerous conditions.

53.  These Defendants breached their duty by, among other
     things:

     a.  Allowing dangerous fire practices on the property;
     b.  Failing to implement adequate fire safety protocols;
     c.  Failing to properly supervise activities occurring
         on the premises;
     d.  Failing to warn guests of the dangers associated
         with the fire;
     e.  Allowing flammable liquids to be poured on an open
         fire; and
     f.  Creating and/or allowing a dangerous condition to
         exist on the premises.

54.  These breaches directly and proximately caused
     Plaintiff's injuries and resulting damages.

## COUNT III: Negligent Supervision
### (Against Zeta Psi and WPI)

55.  Plaintiff incorporates the preceding paragraphs as if
     fully set forth herein.

56.  Defendant Zeta Psi owed a duty to supervise its local
     chapter and members to ensure they conducted activities
     in a safe manner and in compliance with applicable laws,
     regulations, and safety protocols.

57.  Defendant WPI owed a duty to supervise fraternities it
     recognized and promoted, including Zeta Psi, to ensure
     they conducted activities in a safe manner and in
     compliance with applicable laws, regulations, and
     university policies.

58.  These Defendants breached their duties by, among other
     things:

     a.  Failing to implement adequate supervisory
         mechanisms;
     b.  Failing to enforce existing safety protocols;
     c.  Failing to monitor compliance with fire safety
         regulations;
     d.  Failing to provide adequate training on fire safety;
     e.  Allowing dangerous activities to occur without
         intervention;
     f.  Failing to ensure that designated risk managers were
         adequately trained and supervised; and
     g.  Allowing risk managers to neglect their duties to
         identify and address safety hazards.

59.  These breaches directly and proximately caused
     Plaintiff's injuries and resulting damages.

### COUNT IV: Negligent Breach of Assumed Duty
### (Against Zeta Psi and WPI)

60.  Plaintiff incorporates the preceding paragraphs as if
     fully set forth herein.

61.  Defendant Zeta Psi voluntarily assumed duties to
     regulate, supervise, and ensure the safety of activities
     at its local chapters, including the WPI chapter,
     through its constitution, bylaws, rules, educational
     programs, and oversight mechanisms. These duties
     required establishing and enforcing risk management
     policies, requiring the appointment of trained risk
     managers, and ensuring that local chapters implemented
     Zeta Psi's safety protocols at all events.

62.  Despite assuming these duties, Zeta Psi negligently
     breached them by failing to provide adequate training to
     the WPI chapter's risk managers regarding fire safety
     and hazard mitigation, failing to enforce its own risk
     management policies that required risk managers to
     identify and correct dangerous conditions during events,
     failing to supervise or monitor the risk managers'
     activities to ensure compliance with Zeta Psi's safety
     standards, allowing the risk managers to neglect their
     duties by permitting an open fire to burn without proper
     safety measures and failing to prevent the use of
     flammable accelerants, and failing to intervene or take

corrective action despite the foreseeable risks associated with fire-related activities at fraternity events.

63.    Defendant Zeta Psi specifically required the WPI chapter to designate the risk managers who were responsible for identifying safety hazards, ensuring compliance with fire safety protocols, and preventing dangerous activities during fraternity events. Zeta Psi also assumed a duty to adequately train, supervise, and oversee the actions of these risk managers to ensure they fulfilled their responsibilities in protecting the safety of fraternity members and guests.

64.    Defendant WPI voluntarily assumed duties to regulate, supervise, and ensure the safety of fraternity activities through its recognition process, code of conduct, dedicated staff, and promotional materials representing fraternities as regulated organizations that enhance the educational experience. WPI explicitly assumed these duties by requiring fraternities to have designated faculty/staff advisors, mandating compliance with all laws and safety regulations, requiring liability insurance that covers "all chapter officers, functions, and activities," and reserving the right to freeze or deactivate organizations that fail to meet its requirements. By creating this comprehensive regulatory

framework and presenting it publicly, WPI assumed responsibility for ensuring reasonable oversight of fraternity activities.

65.  These Defendants breached their assumed duties by failing to exercise reasonable care in fulfilling these obligations, allowing dangerous conditions and activities to persist.

66.  Plaintiff reasonably relied on these Defendants' assumption of these duties when attending the fraternity event.

67.  These breaches directly and proximately caused Plaintiff's injuries and resulting damages.

## COUNT V: Agency
### (Against Zeta Psi)

68.  Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

69.  At all relevant times, the named fraternity members, including Defendant Henry Pharris,  and the risk managers, were acting as agents of Zeta Psi when conducting fraternity activities at the chapter house, including the event at which the Plaintiff was injured. These individuals were subject to the control and authority of Zeta Psi and Pi Tau Elders, Inc. in carrying out their responsibilities.

70.   Zeta Psi manifested its consent that the Pi Tau chapter
      and its members would act on its behalf by:

   a.  Granting the chapter authority to use Zeta Psi's
       name, symbols, rituals, and branding;
   b.  Authorizing the chapter to recruit members for the
       national organization;
   c.  Establishing and enforcing guidelines for chapter
       operations and risk management;
   d.  Collecting dues from chapter members;
   e.  Monitoring and supervising chapter activities
       through constitutional officers and chapter
       advisors;
   f.  Exercising disciplinary authority over the chapter
       and its members; and
   g.  Representing to the public that the chapter was an
       official part of Zeta Psi.

71.   Defendant Pharris and other Pi Tau chapter members were
      subject to Zeta Psi's control regarding fraternity
      activities, including social events at the chapter
      house, as demonstrated by:

   a.  Zeta Psi's authority to suspend, expel, or otherwise
       discipline chapter members for violations of its
       policies;
   b.  Zeta Psi's right to revoke the chapter's charter;
   c.  Zeta Psi's comprehensive constitution, bylaws, and
       rules governing chapter operations;
   d.  The appointment and oversight of alumni advisors who
       serve as representatives of Zeta Psi within the
       chapter; and
   e.  Zeta Psi's imposition of risk management policies
       and educational requirements on all members.

72.   The negligence of the named fraternity members,
      including the failure to enforce safety protocols, the
      use of flammable accelerants, and the maintenance of an
      open fire, occurred within the scope of their duties as

agents of Zeta Psi and Pi Tau Elders, Inc. These negligent acts were foreseeable and preventable through the exercise of reasonable supervision and enforcement by Zeta Psi and Pi Tau Elders, Inc.

73. The safety violations and negligent acts that caused Plaintiff's injuries occurred within the scope of this agency relationship and the fraternity members' duties because:

   a. The fire was held at a fraternity social event;
   b. The event was conducted at the fraternity house by active members of the fraternity;
   c. The event was consistent with the type of social activities Zeta Psi knew, promoted, and permitted its fraternity chapters to conduct; and
   d. The negligent acts that caused Plaintiff's injuries were foreseeable risks that Zeta Psi was aware of yet failed to prevent through reasonable supervision and enforcement of safety policies.

74. Zeta Psi knew or should have known about the specific dangers of fire-related activities at fraternity events, yet failed to exercise its control to prevent such hazardous conduct by fraternity members acting within the scope of their roles and responsibilities.

75. Zeta Psi is therefore liable for the negligent acts of its agents, Pi Tau chapter and Henry Pharris, that occurred within the scope of the agency relationship and which directly and proximately caused Plaintiff's severe injuries.

**PRAYER FOR RELIEF**

WHEREFORE, as to all counts, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff on all counts;

B. Award compensatory damages in an amount to be determined at trial, exceeding $75,000;

C. Award pre-judgment interest at 12% per annum under M.G.L. c. 231, § 6B;

D. Award interest and costs;

E. Award all other damages which the Plaintiff is entitled to, as well as pre-judgment and post-judgment interests and costs; and

F. Grant such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Yvette Digan, Plaintiff
By her attorney,

_____
Adam Clermont
6 Liberty Square
PMB 226
Boston, MA 02109
Tel: (413) 841-1270 (Massachusetts)
Tel: +852 9086 3191 (Hong Kong)
E-mail: aclermont@attorneyapc.com
BBO No.: 639769